**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ICI BENEFITS CONSORTIUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00603 |
| | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| JULIE SU, *in her official capacity as Acting Secretary of Labor*, and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.   Legal Background ......................................................................................................2

        A.  ERISA Confers Broad Authority to the Department of Labor to Regulate Employee Benefit Plans...........................................................................................................2

        B.  The Department Has Discretion to Issue ERISA Advisory Opinions .........................3

        C.  The Department Has Issued Advisory Opinions on How Multiple Employers Can Participate in a Single ERISA-Covered Benefit Plan....................................................4

            1.  ERISA Coverage of Multiple Employer Plans.....................................................4

            2.  Advisory Opinions on ERISA Coverage of Multiple Employer Plans..................5

        D.  The Department's Guidance on ERISA Coverage of Multiple Employer Plans Is in Flux After the Vacatur of its 2018 Rule.......................................................................6

            1.  The 2018 Rule.....................................................................................................6

            2.  Vacatur of the 2018 Rule.....................................................................................7

            3.  Pending Changes to Agency Guidance ................................................................8

    II.  Factual Background....................................................................................................9

STANDARD OF REVIEW...................................................................................................11

ARGUMENT........................................................................................................................13

    I.   The Court Should Dismiss The Complaint Because Plaintiff Lacks Standing................13

    II.  Alternatively, The Court Should Dismiss The Complaint Because It Fails To State A Claim For Relief.........................................................................................................17

        A.  Count One of the Complaint Is Not Cognizable Under the APA...............................17

            1.  The Department's Failure to Issue an Advisory Opinion at this Time Is Not a Final Agency Action .........................................................................................17

            2.  The Department's Refusal is Committed to Agency Discretion by Law.............27

            3.  The APA Does Not Entitle Plaintiff to Declaratory Relief.................................31

        B.  Count Two of the Complaint Fails to State a Claim for Injunctive Relief ................33

CONCLUSION....................................................................................................................34

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbs v. Sullivan*,
   963 F.2d 918 (7th Cir. 1992) ...................................................................................22

*Acker v. EPA*,
   290 F.3d 892 (7th Cir. 2002) ............................................................................. 18, 19

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ................................................................................................32

*Aiken Cnty. v. Bodman*,
   509 F. Supp. 2d 548 (D.S.C. 2007)..........................................................................25

*Air Brake Sys., Inc. v. Mineta*,
   357 F.3d 632 (6th Cir. 2004) ...................................................................................21

*Ala. Tissue Ctr. of Univ. of Ala. Health Serv. Found., P.C. v. Sullivan*,
   975 F.2d 373 (7th Cir. 1992) .............................................................................23, 34

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*,
   929 F.3d 865 (7th Cir. 2019) ...................................................................................32

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ....................................................................................13

*Ali v. Rumsfeld*,
   649 F.3d 762 (D.C. Cir. 2011).................................................................................32

*Andrews v. Consol. Rail Corp.*,
   831 F.2d 678 (7th Cir. 1987) ...................................................................................30

*ASARCO Inc. v. Kadish*,
   490 U.S. 605 (1989) ................................................................................................16

*AT&T Co. v. EEOC*,
   270 F.3d 973 (D.C. Cir. 2001).................................................................................23

*Bastien v. AT&T Wireless Servs., Inc.*,
   205 F.3d 983 (7th Cir. 2000) ...................................................................................16

*Bd. of Trade of City of Chicago v. SEC*
   883 F.2d 525 (7th Cir. 1989) ...................................................................................19

*Bennett v. Spear,*
    520 U.S. 154 (1997) ................................................................. 17, 18, 20, 22

*Builders Bank v. FDIC,*
    846 F.3d 272 (7th Cir. 2017) ................................................................27

*C&E Servs., Inc. v. D.C. Water and Sewer Auth.,*
    310 F.3d 197 (D.C. Cir. 2002) ................................................................32

*Cabral v. City of Evansville,*
    759 F.3d 639 (7th Cir. 2014) ................................................................16

*Calderon v. Ashmus,*
    523 U.S. 740 (1998) ................................................................17

*Capitol Leasing Co. v. FDIC,*
    999 F.2d 188 (7th Cir. 1993) ................................................................ 12, 15

*Caremark, Inc. v. Goetz,*
    480 F.3d 779 (6th Cir. 2007) ................................................................4

*Chao v. Crouse,*
    346 F. Supp. 2d 975 (S.D. Ind. 2004) ................................................................5

*Citizens for Appropriate Rural Roads, Inc. v. Foxx,*
    14 F. Supp. 3d 1217 (S.D. Ind. 2014) ................................................................26

*City & Cnty. of San Francisco v. Whitaker,*
    357 F. Supp. 3d 931 (N.D. Cal. 2018) ................................................................14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................14

*Clark v. United States,*
    326 F.3d 911 (7th Cir. 2003) ................................................................33

*Collins Music Co. v. United States,*
    21 F.3d 1330 (4th Cir. 1994) ................................................................29

*Commonwealth Edison Co. v. Train,*
    649 F.2d 481 (7th Cir. 1980) ................................................................17

*Cornucopia Inst. v. U.S. Dep't of Agric.,*
    884 F.3d 795 (7th Cir. 2018) ................................................................16

*Credit Managers Ass'n of So. Cal. v. Kennesaw Life & Accident Ins. Co.*,
    809 F.2d 617 (9th Cir. 1987) ........................................................................5

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
    770 F.3d 586 (7th Cir. 2014) ......................................................................11

*Davis v. U.S. Dep't of Hous. & Urb. Dev.*,
    94 F.3d 647 (7th Cir. 1996) ........................................................................18

*Denius v. Dunlap*,
    330 F.3d 919 (7th Cir. 2003) ......................................................................12

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019) ................................................................................14

*Deveraux v. City of Chicago*,
    14 F.3d 328 (7th Cir. 1994) ........................................................................32

*DH2, Inc. v. SEC*,
    422 F.3d 591 (7th Cir. 2005) ......................................................................16

*Dhakal v. Sessions*,
    895 F.3d 532 (7th Cir. 2018) .................................................... 18, 19, 22, 23

*DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*,
    76 F.3d 1212 (D.C. Cir. 1996) ....................................................................25

*EEOC v. Concentra Health Serv., Inc.*,
    496 F.3d 773 (7th Cir. 2007) ......................................................................12

*Ecology Ctr., Inc. v. U.S. Forest Serv.*,
    192 F.3d 922 (9th Cir. 1999) ................................................................22, 27

*First Nat'l Bank of Chicago v. Comptroller of the Currency of the U.S.*,
    956 F.2d 1360 (7th Cir. 1992) ....................................................................23

*Fleszar v. U.S. Dep't of Lab.*,
    598 F.3d 912 (7th Cir. 2010) ......................................................................31

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ....................................................................................32

*Fosnight v. Jones*,
    41 F.4th 916 (7th Cir. 2022) ......................................................................12

*Fossen v. Blue Cross & Blue Shield of Mont., Inc.*,
    660 F.3d 1102 (9th Cir. 2011) ................................................5

*Francis v. Perez*,
    256 F. Supp. 3d 1 (D.D.C. 2017) ..........................................33

*FTC v. Standard Oil Co.*,
    449 U.S. 232 (1980) .........................................................21, 23

*Gallo v. Amoco Corp.*,
    102 F.3d 918 (7th Cir. 1996) ...............................................32

*Geinosky v. City of Chicago*,
    675 F.3d 743 (7th Cir. 2012) ...............................................12

*Gen. Motors Corp. v. EPA*,
    363 F.3d 442 (D.C. Cir. 2004) ............................................21

*Hawk v. Burr*,
    No. 22-1526, 2022 WL 4364740 (7th Cir. Sept. 21, 2022)....................................................19

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ................................................27, 29, 31

*Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*,
    587 F. Supp. 2d 1 (D.D.C. 2008) .........................................21

*Home Builders Ass'n of Greater Chicago v. U.S. Corps of Eng'rs*,
    335 F.3d 607 (7th Cir. 2003) ..........................................22, 26

*Indep. Bankers Ass'n of Am. v. Nat'l Credit Union Admin.*,
    936 F. Supp. 605 (W.D. Wis. 1996)......................................19

*Inst. For Wildlife Prot. v. Norton*,
    303 F. Supp. 2d 1175 (W.D. Wash. 2003) ...........................21

*Kebe v. Naplitano*,
    No. 1:11-CV-01130-JMS, 2012 WL 1409626 (S.D. Ind. Apr. 23, 2012)...............................32

*Knutson v. Vill. of Lakemoor*,
    932 F.3d 572 (7th Cir. 2019) ...............................................33

*Lake v. Neal*,
    585 F.3d 1059 (7th Cir. 2009) .............................................12

*Lalani v. Perryman*,
    105 F.3d 334 (7th Cir. 1997) ...............................................................30

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
    982 F.3d 1060 (7th Cir. 2020) .............................................................13

*Lauderhill Hous. Auth. v. Donovan*,
    818 F. Supp. 2d 185 (D.D.C. 2011) .............................................20, 25

*Linder v. McPherson*,
    No. 14-CV-2714, 2015 WL 739633 (N.D. Ill. Jan. 29, 2015).................12

*Mashni v. U.S. Army Corps of Eng'rs*,
    535 F. Supp. 3d 475 (D.S.C. 2021).......................................................26

*MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*,
    957 F.2d 178 (5th Cir. 1992) .................................................................5

*Menominee Indian Tribe of Wis. v. EPA*,
    947 F.3d 1065 (7th Cir. 2020) ......................................................*passim*

*Meredith v. Time Ins. Co.*,
    980 F.2d 352 (5th Cir. 1993) .................................................................3

*Meyers v. Nicolet Rest. of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ...............................................................13

*Nat'l Parks Conservation Ass'n v. Norton*,
    324 F.3d 1229 (11th Cir. 2003) ...........................................................21

*New England Power Generators Ass'n v. FERC*,
    707 F.3d 364 (D.C. Cir. 2013)..............................................................13

*New York v. U.S. Dep't of Lab.*,
    363 F. Supp. 3d 109 (D.D.C. 2019) ...............................................6, 7, 8

*New York v. U.S. Dep't of Lab.*,
    No. 19-5125 (D.C. Cir. 2019)..............................................................8, 9

*Nor-Am Agr. Prod., Inc. v. Hardin*,
    435 F.2d 1151 (7th Cir. 1970) .......................................................25, 26

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)................................................................................26

*ONRC Action v. Bureau of Land Mgmt.*,
   150 F.3d 1132 (9th Cir. 1998) ........................................................... 18, 19, 25, 26

*P.D. v. Mt. Vernon Cmty. Sch. Corp.*,
   No. 1:07-CV-1048DFHJMS, 2008 WL 1701877 (S.D. Ind. Apr. 10, 2008) ......................... 12

*Perrigo Rsch. & Dev. Co. v. U.S. Food & Drug Admin.*,
   290 F. Supp. 3d 51 (D.D.C. 2017) .................................................... 18, 20, 21, 23, 24

*Peterson v. Barr*,
   965 F.3d 549 (7th Cir. 2020) ........................................................... 28

*Portland Cement Ass'n v. EPA*,
   665 F.3d 177 (D.C. Cir. 2011) ........................................................... 18

*PPG Indus., Inc. v. United States*,
   52 F.3d 363 (D.C. Cir. 1995) ........................................................... 32

*Prosser v. Becerra*,
   2 F.4th 708 (7th Cir. 2021) ........................................................... 14

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952) ........................................................... 32

*Reich v. Valley Nat'l Bank of Ariz.*,
   837 F. Supp. 1259 (S.D.N.Y. 1993) ........................................................... 29

*Saunders v. Davis*,
   No. 15-CV-2026 (RC), 2016 WL 4921418 (D.D.C. Sept. 15, 2016) ....................... 34

*Save the Dunes Council v. Alexander*,
   584 F.2d 158 (7th Cir. 1978) ........................................................... 21

*Schilling v. Rogers*,
   363 U.S. 666 (1960) ........................................................... 32

*Sec'y of Lab. v. Fitzsimmons*,
   805 F.2d 682 (7th Cir. 1986) ........................................................... 2

*Shanbaum v. United States*,
   32 F.3d 180 (5th Cir. 1994) ........................................................... 33

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ........................................................... 2

*Shawnee Trail Conservancy v. Nicholas*,
  343 F. Supp. 2d 687 (S.D. Ill. 2004) ................................................................ 19, 20

*Sierakowski v. Ryan*,
  223 F.3d 440 (7th Cir. 2000) ........................................................................... 17

*Sierra Club v. Marita*,
  46 F.3d 606 (7th Cir. 1995) ............................................................................. 17

*Sierra Club v. Thomas*,
  828 F.2d 783 (D.C. Cir. 1987) ......................................................................... 25

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ...................................................................... 13, 16

*Simon v. Kaiser Permanente Hosps.*,
  No. C 06-03913 SI, 2006 WL 3318094 (N.D. Cal. Nov. 15, 2006) ...................... 34

*Singh v. Moyer*,
  867 F.2d 1035 (7th Cir. 1989) ......................................................................... 27

*Transp. Robert (1973) LTEE. v. U.S. INS*,
  195 F. Supp. 2d 136 (D.D.C. 2002) .................................................................. 32

*United States v. Sawyer*,
  521 F.3d 792 (7th Cir. 2008) ........................................................................... 31

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) ........................................................................... 12

*Va. Beach Policemen's Benevolent Ass'n v. Reich*,
  881 F. Supp. 1059 (E.D. Va. 1995) ....................................................... 20, 24, 30, 31

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ....................................................................................... 14

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*,
  473 U.S. 172 (1985) ....................................................................................... 22

*Wisc. Right to Life, Inc. v. Paradise*,
  138 F.3d 1183 (7th Cir. 1998) ......................................................................... 17

*Yale Broad. Co. v. FCC*,
  478 F.2d 594 (D.C. Cir. 1973) ......................................................................... 31

**Administrative Materials**

Advisory Opinion 1996-25A (Oct. 31, 1996)................................................................5

Response to Loon E. Irish, Esquire,
   1979 WL 169895 (April 25, 1979) .......................................................................28

Response to Mr. John L. Anderson,
   1980 WL 267463 (Feb. 5, 1980)...........................................................................28

Response to Mr. P. Garth Gartrell,
   1984 WL 23439 (June 18, 1984) ...........................................................................28

Response to Mr. Theodore Konshak,
   1996 WL 1671725 (July 8, 1996).........................................................................28

**Statutes**

5 U.S.C. § 701............................................................................................27, 31

5 U.S.C. § 704................................................................................................17

5 U.S.C. § 706........................................................................................26, 27, 31

29 U.S.C. § 1001.............................................................................................2

29 U.S.C. § 1002........................................................................................*passim*

29 U.S.C. § 1103.............................................................................................5

29 U.S.C. § 1021.............................................................................................5

29 U.S.C. § 1132....................................................................................2, 11, 33, 34

29 U.S.C. § 1135..........................................................................................2, 28

29 U.S.C. § 1137............................................................................................17

**Rules**

Fed. R. Evid. 201 ..........................................................................................12

Fed. R. Civ. P. 12 ..........................................................................................11

Fed. R. Civ. P. 65..........................................................................................11

**Regulations**

29 C.F.R. § 2510.3-5 ...................................................................................................7

ERISA Procedure 76-1, 41 Fed. Reg. 36,281 (Aug. 27, 1976) ............................................*passim*

68 Fed. Reg. 5374-01 (Feb. 3, 2003) ........................................................................28

77 Fed. Reg. 1088 (Jan. 9, 2012) ............................................................................3

83 Fed. Reg. 28,912 (June 21, 2018) ...................................................................6, 7

Exec. Order No. 13,813, 82 Fed. Reg. 48, 385 (Oct. 12, 2017) .....................................6

**Other Authorities**

Employee Benefits Security Administration, U.S. Department of Labor, Filing Requests For ERISA Advisory Opinions, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/filing-requests-for-erisa-aos ..............................3

Office of Information and Regulatory Affairs, Office of Management and Budget, Reginfo.gov, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202210&RIN=1210-AC16 .......................................................................................8, 9

Office of Information and Regulatory Affairs, Office of Management and Budget, Reginfo.gov, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=1210-AC16 ..........................................................................................9

## INTRODUCTION

Plaintiff asked the U.S. Department of Labor (Department) to issue an advisory opinion that the health plan it administers for its consortium of colleges and universities is, for purposes of the Employee Retirement Income Security Act of 1974 (ERISA or the Act), one "employee welfare benefit plan" maintained by a "group or association of employers." 29 U.S.C. §§ 1002(1), (5). Generally, a health plan may benefit employees of multiple employers—what ERISA dubs a "multiple employer welfare arrangement" (MEWA), *id.* § 1002(40)—and Plaintiff requested that the Department confirm that its health plan is a *single* ERISA-covered MEWA plan, rather than one where each participating employer established a separate ERISA plan. When the Department deferred decision on Plaintiff's request—because the Department was and still is determining how to proceed in litigation and rulemaking after the vacatur of its 2018 final rule on MEWA coverage—Plaintiff brought this suit. It alleges that the Department's refusal to issue an advisory opinion violates the Administrative Procedure Act (APA) and requests a declaratory judgment that it sponsors a single-plan MEWA, as well as an injunction prohibiting the Department from determining otherwise. Significantly, Plaintiff does not claim that the Department's conduct amounts to agency action unlawfully withheld or delayed. Instead, Plaintiff claims that the Department's decision to postpone acting on the advisory opinion request is itself final agency action subject to arbitrary and capricious review.

The Court should dismiss the suit for lack of jurisdiction or for failure to state a claim upon which relief can be granted. Because the Department has not issued an opinion (let alone taken any investigatory or enforcement steps), and because Plaintiff only speculates that the lack of an advisory opinion has fiscally impacted it by dissuading other institutions from joining its consortium, Plaintiff has not suffered any injury and therefore lacks standing to bring suit. For

much the same reason, Plaintiff has failed to allege a final agency action and, even if "final," the Department's refusal to act is committed by law to the agency's total discretion. The Department is under no obligation to issue an advisory opinion and its regulations do not create any entitlement to one on the part of a requester. And the fact that the Department has determined to revisit the ERISA regulatory scheme in question through notice-and-comment rulemaking underscores the reasonableness of its decision to defer acting on Plaintiff's advisory opinion request.

Even if Plaintiff has standing and states a claim, the most it would be entitled to receive under foundational APA principles is an instruction to the Department to act on the advisory opinion request. Under no theory of the APA would Plaintiff be entitled to any of the declaratory or injunctive relief it has requested.

## BACKGROUND

I.   **Legal Background**

A.   **ERISA Confers Broad Authority to the Department of Labor to Regulate Employee Benefit Plans**

Congress enacted ERISA to establish a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *see* 29 U.S.C. § 1001(b). Under ERISA, benefits provided in an employment context, including health insurance, are regulated by the Department. The Secretary of Labor has primary authority to interpret and enforce Title I of ERISA, *see, e.g.*, 29 U.S.C. §§ 1132(a)(2), (a)(5), 1135; *Sec'y of Lab. v. Fitzsimmons*, 805 F.2d 682, 689–94 (7th Cir. 1986) (en banc), which contains the statute's definitional and coverage sections, 29 U.S.C. §§ 1002, 1003.

As relevant here, one type of ERISA-covered plan is an "employee welfare benefit plan," which the statute defines as "any plan, fund, or program … *established or maintained by an employer* or by an employee organization, or by both … for the purpose of providing" medical and

2

other related benefits.  29 U.S.C. § 1002(1) (emphasis added).  ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan," *id.* § 1002(5), and makes clear that the term "includes a *group or association of employers acting for an employer* [in relation to an employee benefit plan]," *id.* (emphasis added).  "The identification and classification of persons and plans covered" by ERISA "requires a considerable degree of dedicated expertise."  *Meredith v. Time Ins. Co.*, 980 F.2d 352, 357 (5th Cir. 1993).  The Secretary, with her broad authority in administering ERISA, undeniably has the requisite expertise and accordingly has "broad policy-making discretion" to interpret and apply ERISA "with respect to the finite definition of employer … under the statute."  *Id.* at 357–58.

**B.      The Department Has Discretion to Issue ERISA Advisory Opinions**

Within the Department, authority to administer Title I of ERISA is delegated to the Assistant Secretary for the Employee Benefits Security Administration (EBSA).  *See* Secy's Order 1-2011, 77 Fed. Reg. 1088, 1088 (Jan. 9, 2012).  EBSA adopted an operating procedure in 1976 that describes its practice to answer inquiries from entities affected by ERISA "as to their status under the Act and as to the effects of their acts or transactions," "*whenever appropriate*, and in the interest of sound administration of the Act."  ERISA Procedure 76-1 § 2, 41 Fed. Reg. 36,281, 36,282 (Aug. 27, 1976) (emphasis added) (hereafter ERISA Procedure 76-1).[1]

One type of EBSA response is an advisory opinion.  This sub-regulatory guidance is "a written statement issued to an individual or organization, or to the[ir] authorized representative

---

[1]   ERISA   Procedure   76-1   is   also   available   at   https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/filing-requests-for-erisa-aos.

… , that interprets and applies the Act to a specific factual situation." *Id.* § 3.02.[2]  EBSA's responses to inquiries are a matter of discretion, and it "may decline to issue advisory opinions … whenever warranted by the facts and circumstances of a particular case." *Id.* § 5.02; *see also id.* § 5 (titled "*Discretionary* Authority to Render Advisory Opinions" (emphasis added)).  "Pending the adoption of regulations (either temporary or final) involving the interpretation of the application of a provision of the Act, … [i]f an inquiry presents an issue that cannot be reasonably resolved prior to the issuance of a regulation, an advisory opinion will not be issued." *Id.* § 5.03.

An advisory opinion "assumes that all material facts and representations set forth in the request are accurate, and applies only to the situation described" in the request and only to the parties described.  *Id.* § 10.  The requester "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion."  *Id.*  Advisory opinions are "open to public inspection" at the Department's D.C. office, *see id.* § 12.01, and published on the Department's website.  Courts have characterized advisory opinions under ERISA Procedure 76-1 as nonbinding but nonetheless meriting *Skidmore* deference.  *See, e.g., Caremark, Inc. v. Goetz*, 480 F.3d 779, 790 (6th Cir. 2007).

### C.   The Department Has Issued Advisory Opinions on How Multiple Employers Can Participate in a Single ERISA-Covered Benefit Plan

#### 1.   ERISA Coverage of Multiple Employer Plans

Since before ERISA's enactment, health plans have offered benefits to employees of more than one employer.  But not all these plans, known as MEWAs, fall within ERISA's ambit.  The definition of MEWA broadly encompasses "all arrangements"—both employee welfare benefit

---

[2] Another EBSA response is an information letter, which is a written statement that does no more than call attention to a well-established interpretation or principle of the Act, without applying it to a specific factual situation.  *Id.* § 3.01.

plans and "any other arrangement"—"'established or maintained' to offer or provide certain benefits to employees of two or more employers." *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181, 185 (5th Cir. 1992) (quoting 29 U.S.C. § 1002(40)(A)), *cert. denied*, 506 U.S. 861 (1992). ERISA regulates MEWAs to the extent they constitute employee welfare benefit plans. *See, e.g.*, *id.* at 181. That is, the MEWA must be acting "indirectly in the interest of an employer" and establish or maintain a single plan to provide benefits, 29 U.S.C. §§ 1002(1), (5), thereby serving as a "a *bona fide* group or association of employers," *Chao v. Crouse*, 346 F. Supp. 2d 975, 982 (S.D. Ind. 2004) (emphasis added), as opposed to a self-interested "entrepreneurial venture," *MDPhysicians*, 957 F.2d at 185.

If a MEWA is not sponsored by a bona fide group or association of employers—and thus is not a single ERISA-covered plan—it may nevertheless consist of multiple ERISA-covered plans, each sponsored separately by each participating employer as a distinct plan for its own employees. *See, e.g., Credit Managers Ass'n of So. Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987); *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1109–10 (9th Cir. 2011). Under this arrangement, known as a "non-plan" MEWA, each member is an "employer" under ERISA that may individually bear ERISA fiduciary duties, 29 U.S.C. §§ 1103(c), 1104(a), and annual reporting obligations, *id.* § 1021(g). (A "single-plan" MEWA, by contrast, typically bears these obligations as an aggregated group.)

### 2.      Advisory Opinions on ERISA Coverage of Multiple Employer Plans

Over the years, the Department has issued advisory opinions on how a MEWA can qualify as a single ERISA-covered plan. *E.g.*, Advisory Opinion 1996-25A (Oct. 31, 1996).

Historically, the Department examined three general criteria when determining whether "group health plans offered through an association of employers, such as an industry group[] …

qualif[ies] as a single ERISA employee benefit plan, as if the plan was sponsored by a single employer for its employees." *New York v. U.S. Dep't of Lab.*, 363 F. Supp. 3d 109, 119 (D.D.C. 2019).  First, the group must be a "bona fide organization with business/organizational purposes and functions unrelated to the provision of benefits." *Id.* (quotation marks omitted); *see, e.g.*, Dkt. 1-1 at 188, 194.  Second, the group's employer members must "share[] some commonality and genuine organizational relationship unrelated to the provision of benefits." *New York*, 363 F. Supp. 3d at 119 (quotation marks omitted); *see, e.g.*, Dkt. 1-1 at 188, 199.  Third, the group's employer members must "exercise[] control over the program, both in form and substance." *New York*, 363 F. Supp. 3d at 119 (quotation marks omitted); *see, e.g.*, Dkt. 1-1 at 194.  The Department emphasized the fact-intensive nature of the analysis and further noted more specific factors to consider, including "[h]ow members are solicited" and "who is entitled to participate and who actually participates in the group or association."  Definition of "Employer" Under Section 3(5) of ERISA—Association Health Plans, 83 Fed. Reg. 28,912, 28,916 n.13 (June 21, 2018); *see, e.g.*, Dkt. 1-1 at 194.

### D. The Department's Guidance on ERISA Coverage of Multiple Employer Plans Is in Flux After the Vacatur of its 2018 Rule

#### 1. The 2018 Rule

On June 21, 2018, the Department promulgated a final rule designed to make it easier for groups of employers to qualify as ERISA-covered "bona fide associations" and thereby form single ERISA-covered plans. *See generally* 83 Fed. Reg. 28,912.  It did so after President Trump signed an executive order that identified single-plan MEWAs as a potential vehicle to expand small businesses' access to affordable group health insurance by "expanding the conditions that satisfy the commonality-of-interest requirements" and "consider[ing] ways to promote [single-plan MEWA] formation on the basis of common geography or industry."  Exec. Order No. 13,813, 82

Fed. Reg. 48,385, 48,386 (Oct. 12, 2017).[3]  Although the final rule retained the Department's prior guidance as one pathway to becoming a single-plan MEWA—what is sometimes referred to as "Pathway 1," Dkt. 1-1 at 185 n.1—the rule also adopted a more flexible, "alternative" pathway, 83 Fed. Reg. at 28,915, 28,955.

This alternative pathway maintained the Department's prior framework, including the general criteria of a business "purpose," a "commonality of interest" among employer members, and "control" by employer members, but it relaxed what it took to satisfy the former two criteria. *Id.* at 28,912, 28,962.  Specifically, a group could satisfy the new purpose test so long as it had "at least one substantial business purpose" unrelated to the provision of health care, even if its primary purpose was "to offer and provide health coverage to its employer members and their employees." 29 C.F.R. § 2510.3-5(b)(1).  This represented a "departure from" the Department's prior guidance on "purpose," which required that groups be viable organizations separate and apart from providing health benefits.  83 Fed. Reg. at 28,917.  In addition, a group could satisfy the new test for commonality if its members were *either* in the same trade or business *or* in the same geographic area.  29 C.F.R. § 2510.3-5(c); *see* 83 Fed. Reg. at 28,918, 28,924.  Before, "geography, alone, was not sufficient to establish commonality."  83 Fed. Reg. at 28,928 n.40.

### 2.      Vacatur of the 2018 Rule

In July 2018, multiple states sued the Department in the United States District Court for the District of Columbia.  *New York*, 363 F. Supp. 3d 109.  They argued that the 2018 rule violated the APA because the rule exceeded the Department's statutory authority and was arbitrary and capricious.  *Id.* at 121.  In March 2019, the court entered summary judgment for the plaintiffs, ruling that the rule's relaxation of the requirements to qualify as a bona fide group or association

---

[3] The Executive Order, as well as the ensuing final rule and litigation, referred to single-plan MEWAs as "association health plans" or "AHPs."

under ERISA unreasonably implemented the statute.  *Id.* at 129.  The court vacated and remanded the rule to the Department.  *Id.* at 121.

### 3.      Pending Changes to Agency Guidance

In April 2019, the Department timely appealed the vacatur of the 2018 rule.  Notice of Appeal, *State of New York, et al., v. U.S. Dep't of Labor*, No. 19-5125 (D.C. Cir. April 30, 2019). The Department provided an online Q&A in May 2019 advising that, while the appeal was pending, employer groups and associations could still rely on its pre-rule sub-regulatory guidance for establishing a single-plan MEWA; and, two months later, it issued one advisory opinion under the pre-rule guidance. Dkt. 1-1 at 185 n.1; *see also* Dkt. 1 at 8–9.  The appeal was fully briefed as of July 25, 2019, and argued on November 14, 2019.

In February 2021, upon a change in presidential administration, the Court of Appeals stayed the case to allow new agency officials time to determine how to proceed in the case.  *See* Order, *New York*, No. 19-5125 (D.C. Cir. Feb. 8, 2021); Consent Motion to Hold Appeal in Abeyance, *New York*, No. 19-5125 (D.C. Cir. Jan. 28, 2021).  Between April 2021 and December 2022, the Department filed status reports stating that it was still considering how to proceed.

In January 2023, the Department filed a status report stating that "it wishes to engage in notice-and-comment rulemaking to revisit the rule at issue in this appeal.  *See* Office of Information and Regulatory Affairs, Office of Management and Budget, Reginfo.gov, https:// www.reginfo.gov/public/do/eAgendaViewRule?pubId=202210&RIN=1210-AC16."      Status Report, *New York*, No. 19-5125 (D.C. Cir. Jan. 6, 2023) (cited source hereafter "Fall 2022 Regulatory Agenda, 1210-AC16").  The cited source, from the agency's semiannual regulatory agenda, elaborates that the Department's EBSA office "will explore whether to withdraw, or withdraw and replace," the 2018 final rule following the *New York* district court decision.  Fall

2022 Regulatory Agenda, 1210-AC16.  It further explains that "EBSA will reevaluate the criteria for a group or association of employers to be able to sponsor a multiple employer group health plan," and indicates that a proposed rule is forthcoming.  *Id*.[4]  The Department has advised in subsequent status reports that "[the] process" "to revisit the rule … remains ongoing."  Status Report, *New York*, No. 19-5125 (D.C. Cir. July 7, 2023).

## II.    Factual Background

Plaintiff ICI Benefits Consortium ("ICI Benefits" or "the Consortium") was formed in October 2019, about five months after the *New York* district court decision. On April 8, 2020, during the Department's appeal in the case, ICI Benefits submitted an advisory opinion request to the Department's EBSA office.  Dkt. 1 at 1 (¶ 1, citing Dkt. 1-1).  It did so by counsel, and pursuant to ERISA Procedure 76-1.  The request asked EBSA to "issue an advisory opinion confirming that the ICI Benefits Consortium Health Benefit Plan … is a single 'employee welfare benefit plan' under [29 U.S.C. § 1002(1)] maintained by a 'group or association of employers' within the meaning of [29 U.S.C. § 1002(5)], i.e., a multiple employer plan, not a non-plan MEWA."  Dkt. 1-1 at 1; *see* Dkt. 1 at 2 (¶ 2).  In other words, the Consortium requested an opinion that it administered a single-plan MEWA, and that, "[a]ccordingly, each Participating Employer … has not established a separate single employer welfare benefit plan for that Participating Employer's employees."  Dkt. 1-1 at 3 (emphasis omitted); *see* Dkt. 1 at 2 (¶ 2).

The Department replied that it could not "at this time" formally respond to the Consortium's request by "issuing an advisory opinion."  Dkt. 1 at 8 (¶ 41).  As the Complaint

---

[4] The Spring 2023 Regulatory Agenda currently indicates that a notice of proposed rulemaking is scheduled for August 2023.  *See* Office of Information and Regulatory Affairs, Office of Management and Budget, Reginfo.gov, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=1210-AC16.

alleges, the Department "stated" that "it is unable to provide guidance" because any such guidance "may impact" the pending *New York* case. *Id.* at 8–9 (¶ 41).

More specifically, EBSA stated in an email to the Consortium's counsel on September 15, 2022, that it was, "for the time being, … unable to formally address" the advisory opinion request because of the regulatory uncertainty created by the pending litigation. Dkt. 13-2 at 2. As it recapped, the Department's 2018 final rule "creating a regulatory pathway" for single-plan MEWAs had been vacated in district court and is the subject of a pending appeal that has been stayed while "the current Administration … reviews issues in the case and determines how to proceed." *Id.* EBSA observed that "[a]lthough the district court decision and appeal do not technically involve the Department's pre-rule advisory opinions/sub-regulatory guidance on" MEWAs, *i.e.*, the existing "Pathway 1," "it is possible that the appeal or actions of the current Administration regarding the [2018] rule may implicate aspects of the Department's pre-rule … guidance." *Id.* EBSA then noted that the "prior Administration" had "made clear" to "the regulated community at the time of the district court decision" that a MEWA did not need to obtain an advisory opinion to qualify as a single-plan MEWA under Pathway 1, and had "also cautioned those that nonetheless submitted advisory opinion requests about the uncertainty involved and the fact that it could take time for the Department to develop, clear[,] and issue a formal written opinion on the application of Pathway 1 to any particular arrangement." *Id.* According to EBSA, that "continues to be the case today" for such advisory opinion requests. *Id.* EBSA concluded by informing the Consortium's counsel that it would "continue to be available to provide you with informal views as you evaluate the status of your client's group health arrangements," could keep the advisory opinion request "open while the policy issues and pending litigation regarding the

[MEWA] rule are unresolved," and was prepared to provide "periodic[]" updates "on status and changes in the current situation." *Id.*

When the Consortium's counsel followed up to inquire when an advisory opinion would issue, EBSA responded by email on November 9, 2022, stating that, "[f]or the time being … , we are not able to address your request[] with [a] formal advisory opinion[]." Dkt. 13-3 at 2. EBSA advised that its situation "has not changed from what we described in our email to you dated September 15, 2022," and it reiterated each of the points it had previously made. *Id.*

Plaintiff filed this suit on April 6, 2023. *See* Dkt. 1. It asserts two causes of action. In Count One, Plaintiff alleges that "[t]he Department's refusal to act" in response to its advisory opinion request "represents a final agency action" that "is arbitrary and capricious." Dkt. 1 at 9 (¶ 48). Based on the Department's "refusal to act," it requests that the Court issue a declaratory judgment asserting that the ICI Benefits health plan is a "single plan MEWA" under ERISA. *Id.* at 10 (¶ 49); *see also id.* at 11 (Prayer for Relief). In Count Two, Plaintiff requests injunctive relief under 29 U.S.C. § 1132(k) and Federal Rule of Civil Procedure Rule 65 to prohibit the Secretary from reaching a contrary conclusion. *Id.* (¶¶ 51–53); *see also id.* at 11 (Prayer for Relief).

## STANDARD OF REVIEW

The Department moves to dismiss the Complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12 (b)(1), and failure to state a claim upon which relief can be granted, *id.* (b)(6). (Dkt. 13.)

When ruling on a motion to dismiss under Rule 12(b)(1), the district court must "accept as true the well pleaded factual allegations" in the complaint and "draw[] all reasonable inferences" from those allegations "in favor of the plaintiff, … but a plaintiff … bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin*

*Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (quotation marks omitted). The court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (quotation marks omitted). For a 12(b)(6) motion to dismiss, the court must also accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). The court may look beyond the four corners of the complaint and its attachments to consider "information that is subject to proper judicial notice"[5] and "documents that are critical to the complaint and referred to in it."[6] *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). To survive a Rule 12(b)(6) challenge, the complaint must contain sufficient factual allegations to plausibly state a claim on which relief may be granted. *See, e.g.*, *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

---

[5] To the extent the Court rules on Rule 12(b)(6) grounds, the Department requests that the Court take judicial notice of the above-cited Executive Order, *New York* appeal filings, and regulatory agenda notice of the forthcoming MEWA rulemaking. It is well-settled that the Court may take judicial notice of matters of public record under Fed. R. Evid. 201(b)(2) without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("We've long held that district courts can take judicial notice of public court documents and proceedings …."); *Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003) (holding that judicial notice of information from official government website is proper). These documents are all publicly available government records whose accuracy cannot reasonably be questioned.

[6] Incorporation by reference provides a basis for the Court to consider, as part of the 12(b)(6) analysis, the Department's email responses to Plaintiff. Though Plaintiff did not attach the emails to the Complaint, the Complaint nonetheless focuses on the Department's response to Plaintiff's opinion request and the apparent deficiencies in the Department's "stated reason" for declining the request. Dkt. 1 at 8–9 (¶ 41). This discussion clearly refers to the emails and highlights their importance—they are the very documents that contain the Department response and explanation giving rise to Plaintiff's suit. It is therefore proper for the Department to attach the emails to its motion to dismiss (at Dkts. 13-2, 13-3). *See, e.g.*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). To the extent the Court disagrees, it may simply disregard the emails. *See, e.g.*, *Linder v. McPherson*, No. 14-CV-2714, 2015 WL 739633, at *1 & n.1 (N.D. Ill. Jan. 29, 2015) (disregarding certain attached documents and granting motions to dismiss), *aff'd sub nom.* 937 F.3d 1087 (7th Cir. 2019); *P.D. v. Mt. Vernon Cmty. Sch. Corp.*, No. 1:07-CV-1048-DFH-JMS, 2008 WL 1701877, at *1–2 (S.D. Ind. Apr. 10, 2008) (similar). The face of the Complaint amply supports that Plaintiff has failed to state a claim because it has not alleged a final agency action, much less one that is not committed to the agency's discretion by law. *See infra* pp. 18–19, 22, 30.

## ARGUMENT

**I.    The Court Should Dismiss The Complaint Because Plaintiff Lacks Standing**

Article III of the United States Constitution limits the jurisdiction of federal courts to deciding "[c]ases" and "[c]ontroversies," and standing is an essential component of this limitation. *See, e.g.*, *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1063–64 (7th Cir. 2020).  Standing ensures that litigants have a personal stake in the outcome, so that "courts do not decide abstract principles of law but rather concrete cases and controversies." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quotation marks omitted).  The plaintiff, as the party invoking the court's jurisdiction, bears the burden of establishing standing. *See, e.g.*, *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).  It "is a threshold question in every federal case because if the [plaintiffs] do not have standing to raise their claims," then "the court is without authority to consider the merits of the action." *Meyers*, 843. F.3d at 726 (quotation marks omitted).

To establish standing, plaintiffs must demonstrate an "injury in fact"— "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Larkin*, 982 F.3d at 1064 (quotation marks omitted).  They also must show that the injury "is fairly traceable to the challenged conduct of the defendant" and "likely to be redressed by a favorable judicial ruling." *Id*.  At the pleading stage, plaintiffs must offer clear allegations plausibly showing that each of these standing elements is met, *Silha*, 807 F.3d at 173–74, and do so "for each claim that they press and for each form of relief that they seek," *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (quotation marks omitted).

Plaintiff fails to plead a concrete, actual or imminent injury.  The Complaint alleges that the Department's failure to issue an advisory opinion "subjects" Plaintiff and its members to a "lack of clarity" and "to the risk that the Department will deem the Plan to be a non-plan MEWA,"

and in turn "exposes" them "to unnecessary risk of multiple violations of ERISA."  Dkt. 1 at 2, 9 (¶¶ 5, 42).  But mere risk and uncertainty are insufficient.  *See, e.g.*, *New England Power Generators Ass'n v. FERC*, 707 F.3d 364, 369 (D.C. Cir. 2013); *City & Cnty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 944 (N.D. Cal. 2018).  Under settled law, Plaintiff must show more than a "possible future injury"; it must show that the threatened harm is "*certainly* impending," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added) (quotation marks omitted); *see also, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Prosser v. Becerra*, 2 F.4th 708, 714 (7th Cir. 2021), or at the very least that "there is a *substantial risk* that the harm will occur," *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565 (2019) (emphasis added) (quotation marks omitted).  Yet the risk that Plaintiff identifies in its Complaint is merely hypothetical, depending on the occurrence of a speculative series of events:  first, that the Department issues an adverse advisory opinion "deem[ing] [Plaintiff's plan] to be a non-plan MEWA"; next, that the Department exercises its discretionary investigatory powers to look into whether Plaintiff's members have violated their "annual report[ing]" obligations or violated their individual "fiduciary duties … by using commingled funds"; and finally, that the Department finds violations and then exercises its discretionary enforcement powers to impose "penalties" on Plaintiff's members.  Dkt. 1 at 2–3 (¶¶ 5–7).  Nowhere does Plaintiff plausibly substantiate *any* of the linkages in this chain.  It musters up only that its members "*could* face" reporting violations and that the Department "*could* argue" members violated fiduciary duties, essentially conceding that any threatened injury is purely conjectural.  Dkt. 1 at 3 (¶ 7) (emphases added).  That is no surprise, since the basis for Plaintiff's suit is that the Department has *not* issued an opinion.  Dkt. 1 at 2, 9 (¶¶ 7, 48).  It defies logic that, by failing to act—and thus failing to even start the chain of events described above—

14

the Department has subjected Plaintiff to imminent threat of being "deem[ed] … a non-plan MEWA," let alone of any enforcement penalties at the end of the causal chain.

The Department's email responses to Plaintiff's request further demonstrate that Plaintiff faces no impending harm. *See, e.g.*, *Capitol Leasing*, 999 F.2d at 191 (court may view any evidence submitted on issue of subject matter jurisdiction). The Department responded that it could not yet issue an opinion because of the potential changes to MEWA coverage wrought by the pending *New York* case and possible regulatory actions by the current presidential administration. Dkts. 13-2 at 2, 13-3 at 2. And the Department asserted that, in the meantime, MEWAs could still rely on its prior sub-regulatory guidance and did not need an advisory opinion; the Department would need time to write an advisory opinion on any MEWA arrangement under the prior guidance; and Plaintiff's request could remain open. Dkts. 13-2 at 2, 13-3 at 2. In other words, the Department explained that it does not intend to even consider or act on Plaintiff's request while the regulatory landscape is in flux, and that Plaintiff is free in the interim to determine its status and operate under the Department's pre-rule guidance. The only logical inference that flows from this explanation—which in no way conflicts with the Complaint's allegations—is that the Department has no imminent intention to issue an adverse opinion, much less to then investigate or penalize Plaintiff for any ERISA violations.

Perhaps recognizing that it cannot substantiate any imminent enforcement threat, Plaintiff pivots to an alleged injury it currently faces: The Department's "refusal to act" purportedly "deprives" Plaintiff of an affirmative opinion "to show other colleges or universities interested in joining the Consortium" that it is a single-plan MEWA and "discourages" these other institutions from joining, creating a "negative financial impact" for Plaintiff's existing members. Dkt. 1 at 9 (¶¶ 43–44). As with Plaintiff's enforcement allegations, however, this allegation is entirely

speculative.  Plaintiff identifies no colleges or universities that were or are considering joining its Consortium but have been dissuaded by the Department's inaction; the Court therefore cannot credit Plaintiff's conclusory assertion.  *See, e.g.*, *Silha*, 807 F.3d at 174; *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).  In any event, any injury flowing from the conduct of other institutions cannot give rise to standing, as it is neither fairly traceable to the *Department's* conduct nor redressable by the Court.  Whether or not other institutions join Plaintiff's plan "depends on the unfettered choices made by independent actors not before the court[] and whose exercise of broad and legitimate discretion the court[] cannot presume either to control or to predict."  *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (holding that even if invalidation of state law created more revenue for school trust funds, teachers association did not have standing because governing officials could spend funds in ways other than increasing salaries); *see also, e.g.*, *DH2, Inc. v. SEC*, 422 F.3d 591, 597 (7th Cir. 2005) (similar).  Plaintiff has not presented the Court with any "way of knowing which way [other institutions] would proceed" if the Department stopped refusing to act or the Court intervened.  *Cabral v. City of Evansville*, 759 F.3d 639, 642 (7th Cir. 2014).

Even setting all these issues aside, none of Plaintiff's alleged injuries are redressable.  The Department could decide on remand to (a) refuse to issue an advisory opinion on different grounds or simply issue an information letter, subjecting Plaintiff to the same "risk" and uncertainty it now allegedly faces, or (b) find that Plaintiff is a non-plan MEWA, still "depriv[ing]" it of the ability to recruit other members with an affirmative opinion.  *See, e.g.*, *Cabral*, 759 F.3d at 642 (no redressability where, on remand, city could still deny permit).  The Court has no power to direct the Department to give what Plaintiff ultimately seeks:  a favorable advisory opinion.  *See, e.g.*, *Cornucopia Inst. v. U.S. Dep't of Agric.*, 884 F.3d 795, 797 (7th Cir. 2018) (similar).

16

Plaintiff's lack of standing forecloses its request for a declaratory judgment that it is a single-plan MEWA. *See, e.g.*, *Calderon v. Ashmus*, 523 U.S. 740, 746–47 (1998). Such declaratory relief would be a judicial advisory opinion. *See, e.g.*, *Wis. Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185 (7th Cir. 1998). And because Plaintiff has not shown any imminent threat that the Department will deem it a non-plan MEWA and pursue enforcement action against it, it also lacks standing for any injunctive relief to prohibit the Department from issuing an adverse opinion. *See, e.g.*, *Sierakowski v. Ryan*, 223 F.3d 440, 444 (7th Cir. 2000).[7]

## II.   Alternatively, The Court Should Dismiss The Complaint Because It Fails To State A Claim For Relief

### A.   Count One of the Complaint Is Not Cognizable Under the APA

#### 1.   The Department's Failure to Issue an Advisory Opinion at this Time Is Not a Final Agency Action

ERISA expressly incorporates the judicial review provisions of the APA. *See* 29 U.S.C. § 1137(a). Where, as here, the APA provides the cause of action, judicial review is limited to "final agency action." 5 U.S.C. § 704. Two conditions must be met for an agency action to be final: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation and quotation marks omitted); *see also, e.g.*, *Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1070 (7th Cir. 2020). Because neither condition is met here, Plaintiff has failed in Count One of the Complaint to state a claim upon

---

[7] The same reasons establishing that Plaintiff has not adequately pleaded standing also establish that its suit is not ripe for review. Standing "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Sierra Club v. Marita*, 46 F.3d 606, 611 (7th Cir. 1995) (quotation marks omitted). Whether the Court asks if Plaintiff has suffered an actual or imminent injury (standing), or has experienced an immediate and significant hardship requiring intervention now (ripeness), "the result is the same." *Commonwealth Edison Co. v. Train*, 649 F.2d 481, 484 (7th Cir. 1980).

which relief can be granted.  *See, e.g.*, *Dhakal v. Sessions*, 895 F.3d 532, 538–39, 541 (7th Cir. 2018).

*First*, Plaintiff does not plausibly allege that the Department's "failure and refusal to respond" to its advisory opinion request was a consummation of the agency's decisionmaking process.  Dkt. 1 at 9 (¶ 48).  The Department is plainly in the midst of, and not at the end of, the advisory opinion process.

The Complaint itself drives home this conclusion.  It acknowledges that the Department has not reached a definitive conclusion on whether to issue an advisory opinion (nor on the content of that opinion), and has instead communicated only that it cannot respond to Plaintiff's request "at this time."  *Id.* at 8 (¶ 41).  "Putting off a decision is certainly not a consummation of [an] agency's decisionmaking process."  *Perrigo Rsch. & Dev. Co. v. U.S. Food & Drug Admin.*, 290 F. Supp. 3d 51, 62 (D.D.C. 2017) (citing *Bennett*, 520 U.S. at 177–78); *see also, e.g.*, *Portland Cement Ass'n v. EPA*, 665 F.3d 177, 193 (D.C. Cir. 2011) (holding that "decision to continue the process of studying greenhouse gases" was not final action); *Davis v. U.S. Dep't of Hous. & Urb. Dev.*, 94 F.3d 647 (7th Cir. 1996) (similar).  The Complaint further acknowledges that the Department has temporarily held off on issuing an opinion because of a pending appeal in the *New York* case, not because the Department reached a "reasoned," ultimate conclusion after "evaluat[ing] the merits" of Plaintiff's request.  *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1136 (9th Cir. 1998).  That interim decision, or more aptly nondecision, "can hardly be said to mark the consummation of anything"—the advisory opinion process is still underway, the Department could issue an opinion in the future, and Plaintiff remains free in the meantime to operate its plan as it has done since 2019.  *Acker v. EPA*, 290 F.3d 892, 894 (7th Cir. 2002).

On its own terms, then, Plaintiff's Complaint challenges precisely the type of "tentative," nonbinding determination that the Seventh Circuit and district courts in this Circuit have generally found to be nonfinal.  *See, e.g.*, *id.* at 894 (concerning administrative order highlighting possible future enforcement actions); *Hawk v. Burr*, No. 22-1526, 2022 WL 4364740, at *1 (7th Cir. Sept. 21, 2022) (similarly concerning "provisional" agency notice regarding potential eviction action); *Dhakal*, 895 F.3d at 540 (finding no final agency action where asylum office's decision was "more like a tentative recommendation than a final and binding determination" and thus "executive branch simply has not completed its review of [plaintiff's asylum] claims" (quotation marks omitted)); *Indep. Bankers Ass'n of Am. v. Nat'l Credit Union Admin.*, 936 F. Supp. 605, 611, 616 (W.D. Wis. 1996) (similar, where federal agency gave "initial" approval to credit union's application for federal share insurance but "deferred" final decision on issuance of required federal certificates of insurance pending final decision by state agency in plaintiff's administrative challenge to credit union's charter).  In other words, Plaintiff's Complaint "presents a situation where there is no identifiable agency order, regulation, policy or plan that may be subject to challenge as a" consummated agency action.  *ONRC*, 150 F.3d at 1136.  Instead, it merely concerns a "*no*-action letter," and an interim one at that.  *Bd. of Trade of City of Chicago v. SEC*, 883 F.2d 525, 530 (7th Cir. 1989) (emphasis in original); *see also, e.g.*, *Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 705 (S.D. Ill. 2004) (holding that "a decision to postpone the decisionmaking process itself" is "not the culmination of that process").

The regulatory backdrop against which Plaintiff made its opinion request confirms that it has not identified a consummated agency decision.  Before responding to the request, the Department indicated in multiple public filings in the *New York* case that, due to the change in presidential administration, it was potentially revisiting the criteria for MEWA coverage under

ERISA; and, soon after responding, it provided public notice that it would engage in rulemaking to consider withdrawing or replacing the 2018 rule. *See supra* pp. 8–9. This regulatory uncertainty on MEWA coverage logically explains why the Department has temporarily held off on individually advising on Plaintiff's ERISA coverage status—after all, why would the Department risk tying its hands in its upcoming rulemaking or risk offering advice that could quickly be rendered obsolete by the rulemaking? More importantly, "[t]he fact that the Secretary has issued a statement of intent in the [regulatory agenda] to promulgate a regulation addressing this question ostensibly favors a finding that the Secretary has not yet taken final agency action." *Va. Beach Policemen's Benevolent Ass'n v. Reich*, 881 F. Supp. 1059, 1065 n.8 (E.D. Va. 1995); *cf. Lauderhill Hous. Auth. v. Donovan*, 818 F. Supp. 2d 185, 194(D.D.C. 2011) (agency's refusal to approve plaintiff's pending requests until plaintiff obtained legal opinion from state attorney general was nonfinal in part because the opinion process was a related and "legitimate administrative process that has not yet reached its end").

The Department's response reinforces the absence of finality, as it couched its emails in plainly "tentative" terms. *Bennett*, 520 U.S. at 178. It stated that it could not "formally address" Plaintiff's request in a published opinion merely "for the time being," because the potentially shifting regulatory landscape on MEWA coverage required the agency to "take time" to develop a formal written opinion for "any particular [multiple employer welfare] arrangement." Dkt. 13-2 at 2. Again, an "interim or interlocutory decision to postpone the decisionmaking process to a more convenient time and to a more comprehensive process" "does not mark the consummation of an agency decisionmaking process." *Shawnee* 343 F. Supp. 2d at 701; *see also, e.g., Perrigo*, 290 F. Supp. 3d at 62 (similar). The Department also made clear that it had not conclusively evaluated the substance of Plaintiff's request or resolved it, and that its responses were not the end

20

of the matter:  It offered to keep the request "open" while the regulatory issues and *New York* litigation played out, and to update Plaintiff on "status and changes in the current situation."  Dkt. 13-2 at 2.  These explicit indications of further administrative work support nonfinality.  *See, e.g.*, *Perrigo*, 290 F. Supp. 3d at 62 ("When the agency gives an indication that its decision is subject to further consideration or possible modification, its action is not final." (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980)); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1238 (11th Cir. 2003) (relying on the certainty "that further administrative action is forthcoming"); *Inst. For Wildlife Prot. v. Norton*, 303 F. Supp. 2d 1175, 1180–81 (W.D. Wash. 2003) (similar). And the Department pointed out that by temporarily refusing to issue an opinion, it was not changing anything in the interim:  It reiterated past guidance that no group needed an opinion to qualify as a single-plan MEWA.  Dkt. 13-2 at 2; *see e.g.*, *Menominee*, 947 F.3d at 1070 (because "the [agency] letters … did little but restate what the Tribe already knew, … there was nothing … to review"); *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 449 (D.C. Cir. 2004) (similar).  Under these circumstances, "there is no final agency action, in the literal sense" of a consummated result for this Court to review.  *Save the Dunes Council v. Alexander*, 584 F.2d 158, 164 (7th Cir. 1978).

In any event, even if the Department published an advisory opinion about Plaintiff's request, the opinion also would not be a consummation of the agency's decisionmaking process. An advisory opinion under ERISA Procedure 76-1 is tentative because it does not conclusively determine any facts after an investigation, but instead relies exclusively on a party's limited representations in its request.  *See* ERISA Procedure 76-1 § 10. "[A]gency letters based on hypothetical facts or facts submitted to the agency, as opposed to fact-findings made by the agency, are classically non-final for this reason."  *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 639 (6th Cir. 2004).  And an advisory opinion is tentative because it does not commit the agency to take

21

any action at all; it instead is "purely informational in nature," leaving courts with nothing to review. *Menominee*, 947 F.3d at 1070 (quotation marks omitted); *see Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999) ("[C]ourts have recognized that agency recommendations are not reviewable as final agency actions …."). *A fortiorari*, then, the Department's (temporary) failure to issue one here certainly is not a final action.

*Second*, even assuming the Department has reached the end of its advisory opinion process, Plaintiff fails to allege that the Department's refusal to issue an opinion determines rights or obligations or otherwise imposes legal consequences. *Bennett*, 520 U.S. at 177–78. Nor could it. Plaintiff has sued because the Department's "inaction has had just the opposite effect." *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008). Indeed, the crux of Plaintiff's Complaint is that the Department has failed to determine its rights and obligations as a MEWA under ERISA, and that this failure subjects it to a "lack of clarity" and exposes it and its members to "unnecessary risk" of ERISA violations. Dkt. 1 at 2, 9 (¶¶ 5, 42). But, as discussed, mere uncertainty and risk have no legal effect. *See supra* p. 14; *see also, e.g.*, *Dhakal*, 895 F.3d at 540 (holding that although agency decision delayed asylum seeker's ability to have "long-term certainty as to his status," that was insufficient because decision did not presently affect his ability to remain in the United States). The Department's inaction imposes no sanction or "obligations" on Plaintiff and "denies no relief." *Menominee*, 947 F.3d at 1070 (alteration omitted) (quotation marks omitted); *see also, e.g.*, *Home Builders Ass'n of Greater Chicago v. U.S. Army Corps. of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003) (same); *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992) (noting that final agency action "[o]rdinarily … means a final order imposing some sort of sanction"); *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985) (similar).

In fact, all that the Department's temporary inaction does as a practical matter is maintain the status quo. *See, e.g.*, *Dhakal*, 895 F.3d at 540 (maintenance of status quo definitively undercut finality of decision denying asylum); *Menominee*, 947 F.3d at 1070 (similar). Plaintiff remains free to operate its health plan under existing law as it has always done. *See, e.g.*, *FTC*, 449 U.S. at 243 (holding that issuance of FTC complaint was not final action because complaint had no legal force or practical effect on the plaintiff company's daily operations). The Department's email responses confirm this conclusion, explaining that no group needs an advisory opinion to qualify as a single-plan MEWA. Dkts. 13-2 at 2, 13-3 at 2. That stands in stark contrast with the existential threat that the plaintiff faced in *First National Bank of Chicago v. Comptroller of the Currency of the United States* 956 F.2d 1360 (7th Cir. 1992). There, the agency refused a request to waive regulations that barred how plaintiff wanted to restructure an investment fund plaintiff managed so that the bank could withstand pending withdrawal requests that had exceeded the fund's existing cash. *Id.* at 1364–65. As the Seventh Circuit explained, "the bank requested not advice, … but permission to go forward with a concrete proposal that it had already put to the fund participants for their approval"—permission that, if denied, would cause the bank "to fold its tent." *Id.* Here, by contrast, Plaintiff needs no permission from the Department. Although the Department's refusal to issue an advisory opinion may, for the time being, deny Plaintiff "the certainty it requested as to [its] rights," that "does not rise to the level of a final agency action because the status of [those] rights remains unchanged." *Perrigo*, 290 F. Supp. 3d at 63; *see also Dhakal*, 895 F.3d at 540 (same).[8]

---

[8] Moreover, an issued advisory opinion would not trigger legal consequences. Whereas a regulation or substantive rule creates law, an advisory opinion simply reflects the agency's view of what the law requires of a party. *Cf., e.g.*, *Ala. Tissue Ctr. of Univ. of Ala. Health Serv. Found., P.C. v. Sullivan*, 975 F.2d 373, 377 (7th Cir. 1992); *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001).

In light of the foregoing principles, it is no surprise that multiple courts have held that an agency's refusal to issue an opinion letter or take some other similar action is not a final, consummated decision with legal effect. *Virginia Beach,* 881 F. Supp. 1059, is directly on point. There, an organization, a labor union, also sought an advisory opinion from the Department that its MEWA fell within ERISA's scope (under 29 U.S.C. § 1002(40)(A)). *Id.* at 1062. And there, like here, the Department responded that it "was not prepared to make a finding at that time," indicated "[m]ore than a year" after the request "that it intended to develop regulations to address" the coverage question, and eventually formally announced its intention to engage in rulemaking on the issue. *Id.* The district court held that the Department's refusal to issue an opinion was not a final agency action, focusing on how the Department's position "does not subject the [plaintiff's] Plan to new laws or regulations" or "directly jeopardize[] the daily operation of Plaintiffs' business," and has instead "simply maintained the status quo." *Id.* at 1065–66. So too here.

*Perrigo*, 290 F. Supp. 3d 51, is similarly instructive. There, the FDA refused to respond to a generic drug manufacturer's letter requesting that the agency decide that nothing had triggered the start of the window of time during which it had to market its drug or else forfeit its eligibility for a period of marketing exclusivity. *Id.* at 57–58. As the district court explained in reasoning directly applicable here: The FDA's "inaction" simply left the manufacturer "in the position that it *risks* forfeiture if it does not market its product. … [T]he status of the parties' rights remains unchanged" in spite of the risk. *Id.* at 63 (emphasis in original). And likewise applicable is how the FDA's letter showed the agency had not completed its decisionmaking: Just as the Department indicated that it was simply holding off on issuing an opinion during pending litigation and

regulatory changes, the FDA in *Perrigo* similarly stated it would not decide the forfeiture question until another drug was ready for approval and thereby could even trigger any forfeiture. *Id.* at 62.[9]

***

In sum, Plaintiff fails to allege that the Department's temporary refusal to issue an advisory opinion represents a final agency action based on its conclusive nature and legal import. Plaintiff's position otherwise undermines the critical functions of the APA's finality requirement: to "allow[] the agency an opportunity to apply its expertise" and discretion, "avoid[] disrupting the agency's processes, and … relieve[] the courts from having to engage in 'piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary.'" *DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (quoting *Standard Oil*, 449 U.S. at 242); *see also Nor-Am Agr. Prods., Inc. v. Hardin*, 435 F.2d 1151, 1158 (7th Cir. 1970) (similar).

Here, the Department has not yet substantively evaluated or opined on Plaintiff's request to be considered a single-plan MEWA—or even initiated any actual investigatory or enforcement action. Plaintiff's suit thus needlessly asks the Court to disrupt the agency's process and intervene before anything, much less anything of adverse legal consequence, has occurred. This is simply *not* a case where the Court has something final to review because the Department's inaction is the functional equivalent of an express denial of relief that affects rights. *See, e.g.*, *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987); *Lauderhill*, 818 F. Supp. 2d at 195. As discussed, Plaintiff remains free to operate as it always has done. *Nor* is this a case where the Department's inaction has become final because the agency has refused to carry out or has unreasonably delayed

---

[9] Countless other cases mirror *Virginia Beach* and *Perrigo* and reinforce that the Department's failure to issue an advisory opinion is nonsubstantive, interim conduct lacking finality. *See, e.g.*, *ONRC*, 150 F.3d at 1136; *Lauderhill*, 818 F. Supp. 2d at 193–96; *Aiken Cnty. v. Bodman*, 509 F. Supp. 2d 548, 553–54 (D.S.C. 2007).

carrying out a clear statutory duty, *see, e.g.*, *Home Builders*, 335 F.3d at 616; *Sierra Club*, 828 F.2d at 793–94; *ONRC*, 150 F.3d at 1137, or because the agency has unreasonably delayed performing a nonmandatory act within a required timeline, *Sierra Club*, 828 F.2d at 795.  As discussed in the subsection below, the Department's advisory opinions, including when or whether to even issue one, are solely within the agency's discretion under ERISA Procedure 76-1 §§ 2, 5.

This fact likely explains why Plaintiff has pleaded the existence of a final agency action, which is governed by § 706(2), rather than impermissible agency "inaction" under § 706(1).  When an agency has *failed* to act, litigants ordinarily must raise § 706(1) claims to compel the agency to perform the act "unlawfully withheld or unreasonably delayed."  *See, e.g.*, *Norton v. S. Utah Wilderness All.* 542 U.S. 55, 62 (2004) ("The APA provides relief for a failure to act in § 706(1) …."); *Mashni v. U.S. Army Corps of Eng'rs*, 535 F. Supp. 3d 475, 484 (D.S.C. 2021) ("[T]he remedy for administrative inaction is for the court to compel administrative action under § 706(1), not conduct a review of the non-decision under § 706(2)(A)."); *Citizens for Appropriate Rural Roads, Inc. v. Foxx*, 14 F. Supp. 3d 1217, 1227 (S.D. Ind. 2014) (distinguishing between agency action under § 706(2) and inaction under § 706(1)).  But litigants may succeed under § 706(1) only if "an agency failed to take a *discrete* agency action that it is *required to take*," *Norton*, 542 U.S. at 64 (emphases in original), which Plaintiff cannot plausibly show.  Its framing of the Department's failure to act as a § 706(2) final action may properly be understood as an effort to sidestep this insurmountable problem— "to remedy inaction with judicial review, a path for which the law does not provide."  *Mashni*, 535 F. Supp. 3d at 484.  Plaintiffs cannot, under the guise of challenging a final action, in reality challenge a discretionary failure to act that the Court has no power to compel.  *Cf. Nor-Am*, 435 F.2d at 1157–58 (noting that "[t]he flexibility of the finality concept does not … permit facile disregard of the purposes of congressional delegation of power

26

and of the clear procedural scheme delineated" by law).  The Court should therefore reject Plaintiff's attempted § 706(2) end-run around § 706(1), just as courts have routinely refused to allow the reverse to occur.  *See, e.g., Ecology Ctr., Inc. v. U.S. Forest Serv.,* 192 F.3d 922, 926 (9th Cir. 1992) (plaintiffs cannot "evade" § 706(2) "finality requirement with complaints about sufficiency of agency action dressed up as an agency's failure to act" under § 706(1) (quotation marks omitted)).

### 2.    The Department's Refusal is Committed to Agency Discretion by Law

Even if Plaintiff has sufficiently alleged a final agency action, the Department's refusal to issue an advisory opinion "is committed to agency discretion by law" and therefore cannot give rise to an APA claim.  5 U.S.C. § 701(a)(2); *see Builders Bank v. FDIC*, 846 F.3d 272, 274 (7th Cir. 2017) (explaining that, under § 701(a)(2), "the court dismisses the suit on the merits because the plaintiff can't show that the agency's action was unlawful").

When deciding whether a decision is committed to agency discretion, courts examine the applicable statutes and regulations and the nature of the decision to see if they supply "judicially manageable standards … for judging how and when an agency should exercise its discretion." *Menominee*, 947 F.3d at 1072 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)); *see Singh v. Moyer*, 867 F.2d 1035, 1038 (7th Cir. 1989).  If no manageable standard exists—including because the law is drawn so broadly that it provides no meaningful standard, or the agency decision involves "a complicated balancing of a number of factors which are peculiarly within its expertise" —courts are left with nothing to review.  *Heckler*, 470 U.S. at 831.  Such is the case here.

The ERISA statute broadly confers authority on the Secretary of Labor to "prescribe such regulations as [the Secretary] finds necessary or appropriate to carry out the provisions of [Title 1]," and it says nothing about advisory opinions, never mind whether or when they must be issued.

29 U.S.C. § 1135. ERISA Procedure 76-1, promulgated under the Secretary's broad authority, governs advisory opinions, and it sounds in completely discretionary terms. The plain text of the regulation states unequivocally that the Department has "[d]iscretionary [a]uthority to [r]ender [a]dvisory [o]pinions," "answer inquiries … *whenever appropriate*, and in the interest of sound administration of the Act," and therefore "*may decline to issue advisory opinions* … whenever warranted by the facts and circumstances of a particular case." ERISA Procedure 76-1 §§ 2, 5 (emphases added). This regulatory text neither requires the Department to issue an advisory opinion upon request or to do so by a particular time, nor does it meaningfully limit the Department's ability to refuse or delay in a way that a court could substantively evaluate. It in fact does the opposite, broadly permitting the Department to decline to issue an opinion in any given case, including in instances of "pending" regulatory changes. *Id.* § 5.03; *cf., e.g., Peterson v. Barr*, 965 F.3d 549, 552–53 (7th Cir. 2020) (concerning similar regulatory breadth). The Department has exercised this discretion many times, without legal challenge.[10] The Court should decline Plaintiff's invitation to break new ground here.

The nature of the Department's decision reinforces that the decision is unreviewable under the APA. To begin, were the Department to issue an advisory opinion stating that Plaintiff's plan was or was not a single-plan MEWA, the decision to make that pronouncement would itself be committed to the agency's discretion, as neither the applicable statutory nor regulatory text says anything about whether or how to meaningfully evaluate the Department's decision. Failing to

---

[10] *See, e.g.*, Response to Mr. Theodore Konshak, 1996 WL 1671725, at *4 (July 8, 1996) (declining request concerning inherently factual questions raised by administration of ERISA plan); Response to Mr. P. Garth Gartrell, 1984 WL 23439, at *3 (June 18, 1984) (declining request on whether particular payroll deduction program was plan within the meaning of regulation); Response to Mr. John L. Anderson, 1980 WL 267463, at *1 (Feb. 5, 1980) (declining request on matters under investigation by Department); Response to Loon E. Irish, Esquire, 1979 WL 169895, at *1 (April 25, 1979) (declining request where neither Congress nor Department had contemplated type of transaction proposed). Note that the Pension and Welfare Benefit Programs office referenced in these documents became EBSA. *See* 68 Fed. Reg. 5374-01 (Feb. 3, 2003).

make such a pronouncement therefore must be discretionary as well, absent any requirement (which there is not) that the agency offer guidance in response to any request.  *Cf. Menominee*, 947 F.3d at 1072–73 (holding that because agency had discretion to lodge objection under Clean Water Act to state permits, "in the absence of any regulation addressing the basis for the decision to withdraw an objection, th[at] choice is" also committed to agency discretion); *Reich v. Valley Nat'l Bank of Ariz.*, 837 F. Supp. 1259, 1302 (S.D.N.Y. 1993) (similar).

Moreover, refusing to issue a discretionary advisory opinion is much like refusing to prosecute or take an enforcement action, *cf. Collins Music Co. v. United States*, 21 F.3d 1330, 1336 (4th Cir. 1994), which longstanding precedent instructs "is a decision generally committed to an agency's absolute discretion," *Heckler*, 470 U.S. at 831.  In both, an agency declines to exercise its authority to say what the law requires (either through coercive power or guidance). And as with deciding whether to refuse enforcement, deciding whether to refuse or delay issuing an advisory opinion requires the Department to weigh a host of factors that are uniquely within its purview and expertise:  whether a sufficient factual record exists to evaluate the issue and render an opinion; whether the nature of the issue renders it amenable to legal analysis in an opinion; "whether agency resources are best spent on this [opinion request] or another"; "whether the particular [advisory opinion] requested best fits the agency's overall policies" or conflicts in some way with its goals and regulatory priorities; and "whether the agency has enough resources" to devote to the request and any complications arising from it.  *Heckler*, 470 U.S. at 831.  "The [Department] is far better equipped than the courts to" grapple with these considerations and "deal with the many variables involved in the proper ordering of its priorities" in administering ERISA. *Id.* at 831–32; *see Menominee*, 947 F.3d at 1073 (reaching similar conclusion regarding EPA's decision to withdraw objection to state issuance of mining company's dredge-and-fill permit, as

decision hinged on "judgement call" on materiality of its initial concern, sufficiency of state's response, and agency's limited time and resources).

The facts as alleged support this conclusion.  Here, the Department determined that it could not (for the time being) issue an advisory opinion on Plaintiff's MEWA status under ERISA because the pending appeal on the prior administration's 2018 rule and the current administration's potential regulatory actions could implicate the pre-rule sub-regulatory guidance under which Plaintiff seeks coverage.  (The Department has since made clear that it intends to engage in rulemaking on MEWA coverage.  *See supra* pp. 8–9.)  No basis in law exists for the Court to evaluate that decision.  *See, e.g.*, *Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) (similar, regarding agency's authority to extend time for alien voluntary departures); *Andrews v. Consolidated Rail Corp.*, 831 F.2d 678, 685–87 (7th Cir. 1987) (similar, regarding the Secretary of Labor's decision not to initiate enforcement under Rehabilitation Act of 1973); *Va. Beach*, 881 F. Supp. at 1071 (similar, regarding Secretary's decision to withhold advisory opinion finding that, under 29 U.S.C. § 1002(40)(A)(i), plaintiff's MEWA was established pursuant to collective bargaining agreement).  And the Court thus has no basis to question any alleged "inconsisten[cy]" in the Department's explanation.  Dkt. 1 at 8*; see, e.g.*, *Lalani*, 105 F.3d at 338 ("If the decision is unreviewable, then there is no need for explanations.").

Holding otherwise risks seriously hamstringing the Department's exercise of its delegated authority in several ways.  If the Department must issue advisory opinions in circumstances like those presented here, it runs the risk of unintentionally taking interpretive positions that could ultimately become inconsistent with its positions in pending litigation or rulemaking.  It risks unnecessarily devoting time and resources to arrive at an opinion that could be rendered obsolete by that pending litigation or rulemaking.  Also, parties who fear the impacts of forthcoming

regulatory changes may demand advisory opinions so as to be grandfathered under the old rules, thereby undercutting the Department's regulatory agenda. And even without any of these complications, judicial policing of the Department's discretion to issue advisory opinions risks turning the opinions process into a mandatory, hugely burdensome administrative task— essentially forcing the Department to devote considerable time and resources to respond to each request under the threat of judicial review, *see, e.g.*, *Va. Beach*, 881 F. Supp. at 1066, or, if it cannot, to abandon the administrative mechanism altogether. It is precisely these types of considerations that have led courts to dismiss suits challenging discretionary actions. *See e.g.*, *Heckler*, 470 U.S. at 831–32; *Fleszar v. U.S. Dep't of Lab.*, 598 F.3d 912, 914–15 (7th Cir. 2010); *Yale Broad. Co. v. FCC*, 478 F.2d 594, 602 (D.C. Cir. 1973). The Court should do so as well here.

### 3. The APA Does Not Entitle Plaintiff to Declaratory Relief

Plaintiff asserts that because "of the Department's refusal to act," the Court should issue a declaratory judgment stating that the ICI Benefits health plan is a single-plan MEWA. Dkt. 1 at 10 (¶ 49); *see id.* at 11 (Prayer for Relief). But the APA does not entitle Plaintiff to have the Court step into the Department's shoes and issue—by judicial decree—the advisory opinion that the Department, well within its discretion, has declined to issue.

The purpose of APA review is narrow: "[I]t is limited to a search for legal errors and arbitrary application." *United States v. Sawyer*, 521 F.3d 792, 794 (7th Cir. 2008). Accordingly, relief under the APA is likewise circumscribed: The APA permits reviewing courts only to "hold unlawful and set aside agency action, findings, and conclusions," 5 U.S.C. § 706(2), or in the rarer case to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "[S]ettled principles of administrative law" therefore instruct that "when a court reviewing agency action determines that an agency made an error of law" or application, "the court's inquiry is at an

end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995); *see also, e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996).

The Declaratory Judgment Act, which Plaintiff invokes, Dkt. 1 at 3 (¶ 8), does not save Plaintiff's request for declaratory relief. The Declaratory Judgment Act is "procedural," not substantive. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). It neither independently vests courts with jurisdiction nor "provide[s] a cause of action." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *see also, e.g.*, *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (similar). Declaratory relief therefore "'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). So when, as here, a plaintiff fails to state a cognizable claim under the APA, its request for declaratory relief necessarily fails as well; "[t]he Declaratory Judgment Act does not authorize this Court to compel final agency action or to promulgate rules or issue advisory adjudications under its own authority." *Transp. Robert (1973) LTEE. v. U.S. INS*, 195 F. Supp. 2d 136, 139 (D.D.C. 2002); *see also, e.g.*, *C&E Servs., Inc. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (affirming dismissal of declaratory judgment claim on this basis); *Kebe v. Naplitano*, No. 1:11-CV-01130-JMS, 2012 WL 1409626, at *5–6 (S.D. Ind. Apr. 23, 2012) (similar). That conclusion—a clear application of settled law—maintains the proper division between the judicial and administrative realms and further ensures that the Court does not dispense at-will advisory opinions on abstract disagreements. *See, e.g.*, *Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 246–47 (1952); *Aetna,* 300 U.S. at 241; *C&E Servs.*, 310 F.3d at 201.

### B.      Count Two of the Complaint Fails to State a Claim for Injunctive Relief

Plaintiff requests injunctive relief under 29 U.S.C. § 1132(k) to prevent the Department

from issuing an advisory opinion that the ICI Benefits health plan is not a single-plan MEWA, and

under Rule 65 to prevent the Department from taking any action contrary to the Court's findings

with respect to Count One.  Dkt. 1 at 10–11 (¶¶ 51–53 and Prayer for Relief).  But "injunctive

relief … is a remedy, not a cause of action, and thus should not be pleaded as a separate count"

and cannot be available when "plaintiffs fail[] to state" an underlying claim.  *Knutson v. Vill. of

Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019).

Plaintiff's request under Rule 65 hinges on Count One, which, as discussed, must be

dismissed.  Because Plaintiff has not stated a cognizable APA claim and is not entitled to a

declaratory judgment of its ERISA coverage status, it is certainly not entitled to a free-standing

injunction barring the Department from issuing an adverse advisory opinion.

Nor does 29 U.S.C. § 1132(k) supply a basis for injunctive relief here.  That provision

provides a limited waiver of sovereign immunity and cause of action for certain suits against the

Secretary of Labor.  *See Shanbaum v. United States*, 32 F.3d 180, 182 n.2 (5th Cir. 1994); *Francis

v. Perez*, 256 F. Supp. 3d 1, 6 (D.D.C. 2017).  As Plaintiff identifies, § 1132(k) permits suits by

an "administrator, fiduciary, participant, or beneficiary of an employee benefit plan … to restrain

the Secretary from taking any action contrary to the provisions of this chapter."  *See* Dkt. 1 at 10

(¶ 51).  It is Plaintiff's burden to prove that this provision applies, and that Congress has thereby

waived sovereign immunity in the context at issue here.  *See, e.g., Clark v. United States,* 326 F.3d

911, 912 (7th Cir. 2003).

Plaintiff has failed to show how deferring decision on an advisory opinion request is

"contrary to the provisions of" ERISA.  The advisory opinion regulations are distinct from the

ERISA statute itself, and Plaintiff never explains how a violation of the former would be "contrary to the provisions of" the latter. And in any event, an advisory opinion merely states "what the administrative officer thinks the statute or regulation means." *Ala. Tissue Ctr.*, 975 F.2d at 377 (quotation marks omitted). Stating EBSA's view of the law is appropriate, even if a court later interprets the law differently. *Cf. Saunders v. Davis*, No. 15-CV-2026 (RC), 2016 WL 4921418, at \*6 (D.D.C. Sept. 15, 2016) (holding that § 1132(k) did not waive sovereign immunity where Plaintiff did not identify ERISA requirement that Secretary violated); *Simon v. Kaiser Permanente Hosps.*, No. C 06-03913 SI, 2006 WL 3318094, at \*3 (N.D. Cal. Nov. 15, 2006) (same).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss (Dkt. 13).

Dated: July 7, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ZACHARY A. MYERS
United States Attorney

BRAD P. ROSENBERG
Special Counsel
Civil Division, Federal Programs Branch

Of Counsel:

SEEMA NANDA
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor

KATRINA LIU
Trial Attorney
United States Department of Labor
Office of the Solicitor

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA (CA Bar No. 332179)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: 202-305-3080
Yoseph.T.Desta@usdoj.gov

GINA M. SHIELDS
Assistant United States Attorney

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, the foregoing was filed electronically through ECF/CM.   On this same date, electronic service will be made to the following counsel of record through the Court's ECF/CM system:

Andrew M. McNeil
Dakota C. Slaughter
BOSE MCKINNEY & EVANS LLP
AMcNeil@boselaw.com
DSlaughter@boselaw.com
*Attorneys for Plaintiff*

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA
Trial Attorney, U.S. Department of Justice