UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ICI BENEFITS CONSORTIUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00603-JPH-MG |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| LABOR, | ) | |
| JULIE SU in her official capacity as | ) | |
| Acting Secretary of the United States | ) | |
| Department of Labor, | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Independent Colleges of Indiana (ICI) is a group of 29 private colleges and universities in Indiana.  ICI and five of these schools formed the ICI Benefits Consortium, which seeks to lower healthcare costs for school employees.  To ensure that its Health Benefit Plan qualified as a single employee welfare benefit plan under the Employee Retirement Income Security Act (ERISA), the Consortium sought an advisory opinion from the Department of Labor (DOL).[1]  When the DOL refused to provide an opinion, the Consortium brought this case seeking a declaration that its Plan qualifies as a single plan under ERISA and an injunction barring the DOL from saying otherwise.  Defendants filed a motion to dismiss.  Dkt. [13].  Because the Consortium has not shown an

---

[1] The Consortium sues the Department of Labor, the Secretary of the Department, Julie Su, and the United States.  The Defendants will be referred to as the "DOL" throughout this order.

injury in fact, it lacks standing to bring this case.  The Consortium's complaint is therefore **DISMISSED without prejudice** for lack of jurisdiction.

## I.
## Facts and Background

Because the DOL has moved for dismissal under Rule 12(b)(1), the Court accepts and recites the Consortium's " well-pleaded facts as true."  *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023).

ICI is a group of private colleges and universities in Indiana.  Dkt. 1 at ¶ 14.  In 2019, ICI and five of these schools executed the ICI Benefits Consortium Agreement and formed the ICI Benefits Consortium to implement its Health Benefit Plan (the Plan).  *Id.* at ¶ 16.  The Consortium seeks confirmation that the Plan is a multiple employer welfare arrangement (MEWA), which allows multiple employers to combine to provide aggregated benefits to their employees at a reduced cost.  *Id.* at ¶ 32–39; dkt. 19 at 3.  ERISA governs certain MEWAs, including those that are an "employee welfare benefit plan." Dkt. 1 at ¶ 30–31.

In April 2020, the Consortium sought an advisory opinion from the DOL confirming that the Plan qualified under ERISA as a single employee welfare benefit plan.  Dkt. 1 at ¶ 1.  The DOL responded that it could provide informal views and would keep ICI's request for a formal review open but would not issue a formal advisory opinion to the Consortium at that time.  *Id.* at ¶ 41; *see* dkts. 13-2 (email from DOL official); 13-3 (follow-up email from that same

official).[2]  The DOL explained that a pending lawsuit in the D.C. Circuit, *New York v. United States Department of Labor*, No. 19-5125, could alter any guidance provided.  Dkts. 1 at ¶ 41; 13-2; 13-3.

The Consortium brought this case against the DOL and its Acting Secretary, seeking a judgment declaring that (1) the Plan is a single employee welfare benefit plan; (2) the Consortium is a "group or association of employers"; (3) the Arrangement is a MEWA under ERISA; and (4) the Plan is a single plan MEWA.  Dkt. 1 at ¶ 49.  The Consortium also seeks an injunction prohibiting the Secretary of the DOL from determining that the Plan is not an employee welfare benefit plan.  *Id.* at ¶ 51–53.  Defendants filed a motion to dismiss arguing that the Consortium lacks standing to bring this case and alternatively that the complaint fails to state a claim.  Dkt. 13.

## I.
## Legal Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction.  When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met."  *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).  The Court

---

[2] The DOL provided these emails along with their motion to dismiss.  Dkt. 13.  These emails are discussed in the Consortium's complaint but were not included as exhibits.  *See* dkt. 1 at ¶ 41.  "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim."  *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).  Therefore, the Court considers the attached emails from the DOL in evaluating the 12(b)(1) motion.

accepts as true the well-pleaded factual allegations, drawing all reasonable inferences in the plaintiff's favor.  *Id.*

### III.
### Analysis

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction and must be addressed as a threshold matter.  *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 277–78 (7th Cir. 2020).  One jurisdictional requirement is standing, and to "cross the standing threshold, the litigant must explain how the elements essential to standing are met."  *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

The "irreducible constitutional minimum" of standing consists of three elements: the plaintiff "must have suffered (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision."  *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).  Standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The plaintiff has the burden of establishing these elements and therefore must "clearly allege facts demonstrating each element."  *Spokeo*, 578 at 338.[3]

---

[3] The standing challenge here is a "facial" one, as opposed to a "factual" one. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction."  *Apex Digital*, 572 F.3d at 443.  A facial challenge requires the Court to take the allegations in the complaint as true.  *Id.* at 444.  This case involves a facial challenge.  *See* dkt. 14 at 11–12 (DOL brief stating standard of review); dkt. 19 at 7 (Consortium brief describing this is a

4

The DOL argues that the Consortium lacks standing to sue because it has not pled a concrete, actual, or imminent injury.  Dkt. 14 at 24–28.  It contends that the risks and uncertainty that the Consortium says it faces because of the DOL's failure to issue an advisory opinion are speculative and hypothetical and therefore do not confer standing.  *Id.*  The Consortium responds that "[t]he core issue is that the government refuses to advise the Consortium on the state of the Arrangement and the Plan while its enforcement priorities highlight MEWAs."  Dkt. 19 at 9.  More specifically, the Consortium argues that two injuries confer standing: (1) if the DOL determines that the Plan does not qualify as a single plan MEWA, the Consortium and its members could face civil liability, including up to $2,586 in daily fines; and (2) it's a "reasonable inference" that the lack of guidance from the DOL has hindered other ICI member schools from joining the Consortium.  Dkt. 19 at 8–9.

An injury in fact occurs when a plaintiff suffers "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo*, 578 U.S. at 339.  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  At the very least there

---

"facial" challenge).  Therefore, rather than contesting the Consortium's evidence, the DOL argues that even if the allegations in the Complaint here were true, they would be "insufficient to establish injury in fact."  *Apex Digital*, 572 F.3d at 443–44.  The Court likewise accepts the Consortium's factual allegations as true in evaluating the DOL's motion.

must be a "substantial risk that the harm will occur." *Dep't of Commerce v. New York*, 588 U.S. ---, 139 S. Ct. 2551, 2565 (2019).

The Consortium first argues that it faces a potential future injury because of the DOL's refusal to issue an advisory opinion. If it "is mistaken and has implemented a non-plan MEWA," then each member would be required to prepare and submit separate filings and could be subject to monetary fines. Dkt. 19 at 9. The DOL responds that fines would only be levied if a "speculative" chain of events occur. Dkt. 14 at 25. First, the DOL would need to issue an adverse advisory opinion deeming ICI's plan a non-plan MEWA. *Id.* Next, the DOL would need to choose to investigate whether the Consortium's members have violated their fiduciary duties. *Id.* Last, if the DOL finds violations, it would need to choose to impose penalties on ICI's members. *Id.*

The Consortium argues that the DOL's refusal to act exposes the Consortium and its members "to unnecessary risk of multiple violations of ERISA," but it alleges only that it "*could* face daily monetary penalties." Dkt. 1 at ¶¶ 7, 42 (emphasis added). It does not allege facts showing that this injury is "certainly impending." *Clapper*, 568 U.S. at 410; dkt. 19 at 9 (Consortium brief stating "*if* the Plan is a non-plan MEWA . . . .") (emphasis added). Nor does it address the lengthy chain of events that would have to occur before penalties would be imposed. *See Clapper*, 568 U.S. at 409–10 (noting that a "highly attenuated chain of possibilities" does not rise to the level of a cognizable future injury); *see also O'Shea v. Littleton*, 414 U.S. 488, 496–97

6

(1974) (describing a chain of events that would require plaintiffs violate a challenged law, be charged under that law, held to answer, and tried in a proceeding as too speculative to confer standing).

Nevertheless, the Consortium argues that the likelihood of harm is heightened because the DOL has prioritized "policing" MEWAs through its "National Enforcement Project." Dkt. 19 at 2, 5, 9. This "National Enforcement Project" seeks to shut down "abusive" MEWAs and "to proactively identify known fraudulent MEWA operators to ensure they do not terminate one MEWA just to open another in a different state." *Id.* at 2 (quoting excerpts of the enforcement directive from the DOL website). But those allegations aren't in the complaint, and even if they were there's no indication that the Consortium—a group of Indiana universities—would "terminate one MEWA just to open another in a different state." *See* dkt. 1 at 4. Nor is there any allegation that the Plan is fraudulent or abusive. *See* dkt. 19 at 5. Instead, the Consortium has implemented what it believes to be a compliant MEWA, and it requests that the DOL to "confirm" that view by issuing an advisory opinion. Dkt. 1 at ¶ 2; *see* dkt. 19 at 9. Therefore, the existence of the Enforcement Project does not "tie this theoretical harm to an actual and imminent threat of enforcement." *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 490 (7th Cir. 2004); *see Clapper*, 568 U.S. at 411 ("First, it is speculative whether the Government will imminently target communications to which respondent are parties.").

The Consortium has not shown there is a "substantial risk" of economic harm resulting from government action by the DOL so this alleged injury is insufficient to confer standing.  *See Dinerstein v. Google, LLC*, 73 F.4th 502, 514 (7th Cir. 2023) (holding that "bare assertions of harm—unsupported by any concrete details—do not suffice to allege a plausible, concrete injury").

The Consortium next argues that regardless of what the DOL does in the future, the Consortium has already experienced a concrete injury because "uncertainty surrounding the Plan's status caused by the Department discourages other ICI members from joining the Consortium."  Dkt. 19 at 9. The Consortium argues that only 5 of its 29 member institutions have joined the Consortium, despite "its strong early financial success." Dkt. 19 at 9.  The Consortium argues this creates a "reasonable inference" that the DOL's refusal to issue an advisory opinion led to low membership because the "unconfirmed status" of the Plan creates an "unnecessary risk."  *Id.* at 9–10.

But this allegation is conclusory and speculative—it does not show that the DOL's refusal to provide an advisory opinion is the reason that other institutions have not joined the Consortium.  *Schober*, 366 F.3d at 489 ("Mere speculation is not enough to establish an injury in fact.").  The Consortium does not allege, for example, that any of its members that have not joined the Plan have declined to do so because of the DOL's refusal to provide an advisory opinion.  Instead, it alleges only that the DOL's failure to act "deprives the Consortium of an affirmative advisory opinion" to show other colleges or

universities, and that this "discourages other colleges and universities from joining the Consortium." Dkt. 1 at ¶¶ 43–44.

Additionally, other institutions' failure to join is not redressable here. The Court has "no way of knowing" how other institutions would proceed following a ruling in the Consortium's favor, based on its allegations. *Cabral v. City of Evansville*, 759 F.3d 639, 642 (7th Cir. 2014). Speculation on how other institutions—nonparties to this action—would proceed "is not enough to turn this into a case and controversy with a redressable injury." *Id.* at 642–43; *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) ("Whether the association's claims of economic injury could be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict."). Moreover, the DOL has told the Consortium to rely on past guidance, and the Consortium has not alleged that this isn't enough for its members to decide whether to join the Plan. *See* dkt. 13-2 (noting Plans "are not required to obtain an advisory opinion from the [DOL] to qualify"). As pled, this theory of standing therefore "rest[s] on mere speculation about the decisions of third parties." *Dep't of Commerce*, 139 S. Ct. at 2566. Therefore, the Consortium has not established that it has standing to pursue this action.

**IV.**
**Conclusion**

Defendants' motion to dismiss for lack of subject matter jurisdiction is

**GRANTED**.  Dkt. [13].  The complaint is **DISMISSED without prejudice**.

Plaintiff shall have **through April 28, 2024** to file a motion for leave to

amend their complaint.  *See, e.g.*, *Runnion ex rel. Runnion v. Girl Scouts of*

*Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).  If the

Consortium does not seek leave to amend, the Court will enter final judgment.

**SO ORDERED.**

Date: 3/28/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.

10